No. 17-____

# United States Court of Appeals for the Ninth Circuit

COLIN R. BRICKMAN,

*Plaintiff-Respondent,*

v.

FACEBOOK, INC.,

*Defendant-Petitioner.*

On Petition for Review From The United States District Court
For The Northern District of California (Henderson, J.)
Civil Action No. 3:16-cv-00751-TEH

## PETITION FOR PERMISSION TO APPEAL

Elizabeth L. Deeley
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400

Andrew B. Clubok
Susan E. Engel
Devin S. Anderson
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
(202) 879-5000

*Counsel for Defendant-Petitioner
Facebook, Inc.*

May 8, 2017

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner Facebook, Inc. states that it is a publicly held Delaware corporation. It has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................1

QUESTIONS PRESENTED..............................................................5

BACKGROUND ...............................................................................5

REASONS FOR GRANTING PERMISSION TO APPEAL .................9

I.      The District Court's Order Meets The Section 1292(b) Criteria. ..................9

     A.      The Order Resolves Two Controlling Questions of Law. ...................9

     B.      There Is Substantial Ground For Difference Of Opinion On The ATDS And First Amendment Questions. ...........................................11

     C.      An Immediate Appeal May Materially Advance The Ultimate Termination Of The Litigation.........................................................15

II.      The Order Below Presents Important Questions That Warrant An Immediate Appeal........................................................................16

CONCLUSION ................................................................................20

## EXHIBITS

January 27, 2017 Order Denying Facebook's Motion to Dismiss ..............Exhibit 1

April 27, 2017 Order Granting Facebook's § 1292(b)/Stay Motion ...........Exhibit 2

First Am. Compl. ...............................................................................Exhibit 3

*Holt v. Facebook, Inc.* May 2, 2017 Order Granting Facebook's § 1292(b)/Stay Motion .................................................................Exhibit 4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA International v. FCC*,
No. 15-1211 (D.C. Cir. filed Nov. 25, 2015) .................................................8, 9

*Cahaly v. Larosa*,
796 F.3d 399 (4th Cir. 2015) ...............................................................12

*Cent. Radio Co. Inc. v. City of Norfolk*,
811 F.3d 625 (4th Cir. 2016) ...............................................................18

*City of Boerne v. Flores*,
521 U.S. 507 (1997)............................................................................11

*DISH Network Corp. v. FCC*,
653 F.3d 771 (9th Cir. 2011) ...............................................................12

*Dominguez v. Yahoo, Inc.*,
629 F. App'x 369 (3d Cir. 2015) ..........................................................13

*Duguid v. Facebook, Inc.*,
No. 17-15320 (9th Cir. Feb. 23, 2017) .............................................1, 2, 6, 13, 14

*Flores v. Adir Int'l LLC*,
No. 15-56260, 2017 WL 1101103 (9th Cir. Mar. 24, 2017) .............................15

*Free Speech Coal., Inc. v. Attorney Gen.*,
825 F.3d 149 (3d Cir. 2016) .................................................................18

*Gragg v. Orange Cab Co.*,
995 F. Supp. 2d 1189 (W.D. Wash. 2014) ........................................................10

*Gresham v. Rutledge*,
198 F. Supp. 3d 965 (E.D. Ark. 2016)............................................................12

*Heaton v. Soc. Fin., Inc.*,
No. 14-CV-05191-TEH, 2016 WL 232433 (N.D. Cal. Jan. 20,
2016) ...............................................................................................11

*Holt v. Facebook, Inc.*,
No. 16-CV-02266-JST, 2017 WL 1100564 (N.D. Cal. Mar. 9, 2017) .....................................................................................6, 14, 15

*In re Cement Antitrust Litig.*,
673 F.2d 1020 (9th Cir. 1982) ...............................................3, 10, 16

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 1996) ...............................................................16

*Marks v. Crunch of San Diego*,
No. 14-56834 (9th Cir. Nov. 21, 2014) ............................................15

*National Institute of Family & Life Advocates v. Harris*,
839 F.3d 823 (9th Cir. 2016), *rehr'g and rehr'g en banc denied*
(Dec 20, 2016), *cert. pet'n filed* (Mar 20, 2017) ................................19

*Norton v. City of Springfield*,
806 F.3d 411 (7th Cir. 2015) ..............................................................18

*Nunes v. Twitter, Inc.*,
No. 14-CV-02843-VC, 2014 WL 6708465 (N.D. Cal. Nov. 26, 2014) ...............................................................................................13

*Pursuing America's Greatness v. FEC*,
831 F.3d 500 (D.C. Cir. 2016)...........................................................17

*R.A.V. v. St. Paul*,
505 U.S. 377 (1992)............................................................................12

*Reed v. Town of Gilbert*,
135 S. Ct. 2218 (2015).........................................4, 12, 17, 18, 19, 20

*Reese v. BP Expl. (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) ........................................................11, 12

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ..............................................................13

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803 (2000)............................................................................12

iv

*Weisberg v. Stripe, Inc.*,
No. 16-CV-00584-JST, 2016 WL 3971296 (N.D. Cal. July 25, 2016) ..................................................................................................13

**Constitutional Provisions**

U.S. Const. Amend. I ...................................... 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 12, 17, 20

**Statutes**

28 U.S.C. § 1292(b) ........................................... 1, 2, 3, 4, 8, 9, 11, 16, 17

47 U.S.C. § 227 ...........................................................................................1

47 U.S.C. § 227(a)(1)...........................................................................3, 6, 13

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................................2

47 U.S.C. § 227(b)(1)(B) ...........................................................................2

47 U.S.C. § 227(b)(2)(C) ...........................................................................2

**Rules**

Fed. R. App. P. 5(a)(3)...............................................................................9

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller, et al., *Fed. Prac. & Proc. Juris.* § 3930 (3d ed.) ...........................................................................16

## INTRODUCTION

As *two* district courts have now recognized in related cases involving Facebook, the decision below warrants immediate review because it satisfies the criteria of 28 U.S.C. § 1292(b) and raises critical issues about the extent to which the First Amendment protects communications between a social networking service and the people who choose to use its service.

Plaintiff Colin Brickman is one of three plaintiffs who have brought putative class action cases in the Northern District of California, alleging that Facebook violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by using an automated telephone dialing system ("ATDS") to send a text message to a phone number associated with a particular Facebook account. Plaintiff alleges that Facebook sent him a single text message that invited him to wish his Facebook friend Jim Stewart a happy birthday. He admits that he gave Facebook his cell phone number and associated the number with his Facebook profile. The other two cases involve a text message inviting a Facebook user to post a status update after seven of her friends posted updates that week (*Holt*), and login notification messages sent as a security measure to alert a particular user that his account was accessed by an unrecognized device (*Duguid*). In *Holt*, the district court denied Facebook's motion to dismiss on ATDS and First Amendment grounds, but in an order dated May 2, 2017, the court "agree[d] with [the *Brickman* court's] analysis"

of the need for immediate review and granted certification under section 1292(b) and stayed proceedings in the case. Ex. 4 (*Holt* May 2, 2017 Order) at 1.[1] And in *Duguid v. Facebook, Inc.*, the district court granted Facebook's motion to dismiss for failure to allege an ATDS, and that plaintiff's appeal is pending in this Court. *See* No. 15-CV-00985-JST, 2017 WL 635117 (Feb. 16, 2017), *appeal docketed*, No. 17-15320 (9th Cir. Feb. 23, 2017).

Plaintiff's claim here should also have been dismissed because it runs headlong into the First Amendment. The TCPA is a content-based restriction of speech—it prohibits using an automated telephone dialing system to call a cellular telephone number, but exempts certain categories of calls based on the content of the speaker's message, including speech about government debt, 47 U.S.C. § 227(b)(1)(A)(iii), speech that the FCC decides will promote privacy, *id.* § 227(b)(2)(B)(ii)(I), (b)(2)(C), and speech about urgent situations, *id.* § 227(b)(1)(A),(B). Plaintiff argued that Facebook used an ATDS to send the birthday message, that the content of the message did not fall into any of the exempted categories of speech, and that Facebook thus violated the TCPA. But the First Amendment does not allow that type of picking and choosing of permissible speech. Plaintiff's TCPA claim would impermissibly leave social networking

---

[1] Facebook intends to file an petition to this Court for permission to appeal.

services guessing as to which types of messages they can send to people who have opted to use their services, and which will expose them to liability.

In denying Facebook's motion to dismiss, the district court *agreed* that the TCPA is a content-based speech restriction but found that the TCPA survived strict scrutiny on its face and as applied to the birthday message. The court also rejected Facebook's ATDS arguments, including that the definition of an "automatic telephone dialing system" (i) should be construed narrowly in light of the constitutional concerns in restricting speech based on the speaker's message, and (ii) should not be read to reach equipment that allegedly sent a single personalized message about a specific event to a phone number that was not "random[ly] or sequential[ly] … generat[ed]," 47 U.S.C. § 227(a)(1).

The district court rightly held, as the district court has now also done in the *Holt* case, that its rulings satisfied the three criteria for review under section 1292(b) and warranted immediate review. *See generally In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). *First*, Facebook's First Amendment and ATDS arguments each present a "controlling question of law." 28 U.S.C. § 1292(b). As Plaintiff and the Government do not dispute, if this Court were to agree with Facebook on either question, there would be nothing left to do but dismiss this case entirely. *Second*, there is "substantial ground for difference of opinion." *Id.* As the district court put it, the ATDS question is a "close one," and

3

courts within this Circuit have applied "differing" and "conflicting" interpretations of ATDS, including in the three cases all involving whether Facebook sent messages using an ATDS. Ex. 2 (Apr. 27, 2017 Order) at 5–6. And on the First Amendment question, the district court recognized that "other courts could have endorsed the opposite result," given "the high bar that strict scrutiny presents." *Id.* at 6. *Third*, an "immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), because it could result in immediate dismissal of the case if this Court agrees with Facebook.

The First Amendment question is also an important constitutional issue that merits interlocutory review to clarify the law, including whether the First Amendment concerns warrant a narrower construction of the TCPA. Under the Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), facially content-based restrictions are "presumptively unconstitutional," *id.* at 2226, no matter "the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech," *id.* at 2228 (citation omitted). Yet the district court applied what can only be called a diluted version of strict scrutiny, holding that the TCPA passes constitutional muster because it "contains only two [content-based] exceptions," which do not "allow[] for unlimited proliferation of any type of call." Ex. 1 (Jan. 27, 2017 Order) at 14–15. But there is no de minimus exception to strict scrutiny that allows the

4

Government to favor a small number of messages based on their subject matter.

This is all the more important here, where some courts, including the court below, have interpreted the meaning of ATDS so broadly that the TCPA reaches messages sent by almost any type of equipment, including an iPhone or any computer software program—and it reaches messages like the birthday reminder that was allegedly sent to someone with whom Facebook has a relationship. Such an overbroad interpretation has a substantial chilling effect on messages with content the Government has disfavored—messages which can now only be sent with fear of TCPA liability. Immediate review is warranted.

## QUESTIONS PRESENTED

(a) Does the TCPA definition of an ATDS require a plaintiff to show that a defendant used "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator," or merely equipment that can dial a number from a list with a computer software program?

(b) Does the content-based TCPA survive strict scrutiny on its face or as applied to the birthday reminder text message at issue here?

## BACKGROUND

This is one of three cases brought in the Northern District of California where a Facebook user or a person assigned the cell phone number of a Facebook user has alleged that Facebook violated the TCPA by sending a text message about

a particular Facebook account. The district court dismissed the first of those cases, which involved login notification messages, *see Duguid*, 2017 WL 635117, at *1, and the plaintiff's appeal is now pending before this Court, *see Duguid v. Facebook, Inc.*, No. 17-15320 (9th Cir. Feb. 23, 2017). In a second case involving status update messages, the district court denied Facebook's motion to dismiss, *Holt v. Facebook, Inc.*, No. 16-CV-02266-JST, 2017 WL 1100564, at *1 (N.D. Cal. Mar. 9, 2017), but agreed with the court below that the ATDS and First Amendment questions warrant immediate appellate review, *see* Ex. 4 (*Holt* May 2, 2017 Order).

This case involves a single text message that says: "Today is Jim Stewart's birthday. Reply to post a wish on his Timeline or reply with 1 to post 'Happy Birthday!'" Ex. 1 (Jan. 27, 2017 Order) at 4. As alleged, Plaintiff uses Facebook and provided Facebook his cell phone number; Jim Stewart is one of Plaintiff's Facebook friends. *See id.* Plaintiff alleges that Facebook sent the birthday reminder using the specialized autodialing equipment prohibited by the TCPA, an ATDS, which the statute defines as equipment that can "store or produce telephone numbers to be called, using a random or sequential number generator … and … dial such numbers." 47 U.S.C. § 227(a)(1).

Facebook moved to dismiss on the grounds, as relevant here, (i) that Plaintiff failed to allege the use of an ATDS because Plaintiff's allegations showed nothing

6

random or sequential about the targeted birthday message he allegedly received from Facebook, and (ii) that, if construed to reach the birthday reminder message, the TCPA violates the First Amendment on its face and as applied because it is a content-based restriction of speech that is not the least restrictive means of pursuing the Government's asserted privacy interest. Plaintiff argued, by contrast, that he had to allege only that Facebook used computer software that was capable of dialing a number from a list, and that the TCPA was a content-neutral restriction of speech that could nevertheless survive strict scrutiny. The United States intervened and defended the constitutionality of the TCPA, arguing that the statute was not content-based but could survive strict scrutiny in any event.

The district court denied Facebook's motion, making two rulings relevant here. *First*, although recognizing that "the call is certainly a close one," Ex. 1 (Jan. 27, 2017 Order) at 6, the court nonetheless ruled that Plaintiff had alleged sufficient facts to support a claim that Facebook used an ATDS to send the birthday message. The court adopted a broad interpretation of an ATDS: equipment that has the "capacity to generate numbers and dial them without human intervention even if the numbers came from a calling list" and regardless of whether the messages "direct[ly] target[ed]" the plaintiff. *Id.* at 7 (citation omitted). The court acknowledged that Plaintiff's allegations showed that the message was not randomly sent to Plaintiff and was in fact directly targeted to him,

7

but the court nevertheless found that "Facebook could have used an ATDS to send out the targeted messages" because software that pulls a number from a list and dials it without human intervention is an ATDS. *Id.* The court also held that the only type of "human intervention" that defeats an ATDS allegation is human activity that "*directly* trigger[s]" or is the actual "impetus for Facebook sending the Birthday Announcement Text." *Id.* at 7, 8.

*Second*, in a first-of-its-kind ruling, the court agreed with Facebook that the TCPA is a content-based restriction of speech subject to strict scrutiny because TCPA exceptions draw distinctions based on the content of the speech at issue. *See id.* at 11. But the court went on to hold that the statute survives the rigors of strict scrutiny because it was neither overinclusive nor underinclusive, and "Facebook's [s]uggested [a]lternatives [a]re [n]ot [e]ffective." *Id.* at 14.

Facebook filed a motion asking the district court to certify its ruling for interlocutory review under section 1292(b) and in the alternative to stay the case pending the outcome of *ACA International v. FCC*, No. 15-1211 (D.C. Cir. filed Nov. 25, 2015). After briefing and an additional hearing, the court determined that both its ATDS and First Amendment rulings satisfied the criteria of section 1292(b). The court also ruled that district court proceedings would be stayed pending the resolution of *ACA International*, in the event this Court does not grant permission for an interlocutory appeal. This petition is timely filed within ten days

8

of the district court's ruling certifying its prior January 27, 2017 order for appeal. *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a)(3).

## REASONS FOR GRANTING PERMISSION TO APPEAL

As the district court explained, the First Amendment and ATDS rulings below readily satisfy all three criteria for an interlocutory appeal under section 1292(b), and neither Plaintiff nor the Government contested two out of the three criteria. Facebook respectfully submits that this Court should exercise its discretion to accept the appeal because it presents an exceptionally important constitutional issue concerning the application of *Reed*'s test for determining whether a statute is content-based to statutes like the TCPA and how the strict scrutiny framework should be applied post-*Reed*. An immediate appeal is warranted to avoid the waste of resources that would result if the case proceeds through contentious discovery and a trial, only for this Court to hold on a subsequent appeal that the claim should have been barred at the outset.

## I. The District Court's Order Meets The Section 1292(b) Criteria.

### A. The Order Resolves Two Controlling Questions of Law.

As the district court correctly held, the requirement under section 1292(b) that its order resolve a "controlling question of law" is satisfied where resolution of the question on appeal "could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. Neither Plaintiff nor the Government have ever disputed that the ATDS and First Amendment issues

involve controlling questions of law.

The district court's decision adopted an ATDS standard requiring that Plaintiff allege only that Facebook used computer software to select Plaintiff's telephone number from a list and then dial that number. Ex. 1 (Jan. 27, 2017 Order) at 6–7. The court rejected a standard requiring (as the statute does) that the equipment have the capacity to use a random or sequential number generator. Whether the district court adopted the correct ATDS standard is a "controlling question of law," because a reversal on appeal "could materially affect the outcome of litigation"—indeed, these issues would dispose of the case entirely. *In re Cement*, 673 F.2d at 1026. Under Facebook's proposed standard, Plaintiff would have been required to allege facts giving rise to a plausible inference that Facebook used equipment that had the capacity to generate random or sequential numbers or that Facebook dialed Plaintiff's number at random or in sequence. *See, e.g.*, *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014). Plaintiff did not even argue that he could satisfy this standard—clearly his phone number was not a made up number, given that he allegedly supplied Facebook with the number, nor was the message sent to his number randomly, given his relationship with Facebook. And all parties agree that, if Facebook is right about the TCPA's incompatibility with the First Amendment, the case must be dismissed with prejudice. Thus the "controlling question" requirement is easily satisfied.

10

**B.     There Is Substantial Ground For Difference Of Opinion On The ATDS And First Amendment Questions.**

There is also "substantial ground for difference of opinion," because "reasonable jurists might disagree on [the] resolution" of the First Amendment question, *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011), and "courts have, in fact, disagreed" on the ATDS issue, *Heaton v. Soc. Fin., Inc.*, No. 14-CV-05191-TEH, 2016 WL 232433, at *4 (N.D. Cal. Jan. 20, 2016).

The district court recognized that the First Amendment question is "a novel issue of first impression," but that "it is plausible that other courts could have endorsed the opposite result," particularly in light of "the high bar that strict scrutiny presents."    Ex. 2 (Apr. 27, 2017 Order) at 6.    The district court's description of the First Amendment question dovetails with this Court's articulated standard for certification under section 1292(b):  it is a "novel legal issue[] … on which fair-minded jurists might reach contradictory conclusions."  *Reese*, 643 F.3d at 688.

Here, reasonable jurists could disagree with the ruling below, at the very least because the application of strict scrutiny is "the most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), and this Court has observed that regulations subject to strict scrutiny "almost always violate the First Amendment," *DISH Network Corp. v. FCC*, 653 F.3d 771, 778 (9th Cir. 2011).  There is certainly a reasonable argument that when it comes to a content-

11

based statute like the TCPA that is "'presumptively invalid,'" the Government failed "to rebut that presumption." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000) (quoting *R.A.V. v. St. Paul,* 505 U.S. 377, 382 (1992)). A "fair-minded jurist[]," *Reese*, 643 F.3d at 688, could conclude that the TCPA is not the least restrictive alternative for serving the Government's articulated interest in protecting residential privacy. Indeed, the only other two decisions that have applied strict scrutiny to a robocall statute in the wake of *Reed* both concluded that the government had failed to show that a content-based ban on autodialing was the least restrictive alternative. *See Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015); *Gresham v. Rutledge*, 198 F. Supp. 3d 965, 967 (E.D. Ark. 2016). Permitting an appeal will allow the Court to resolve that important constitutional question.

The court below also recognized that there are substantial grounds for difference of opinion on the ATDS question. As the district court stated, "it is clear that courts in this Circuit have reached conflicting interpretations when evaluating whether a plaintiff's allegations of an ATDS are sufficient." Ex. 2 (Apr. 27, 2017 Order) at 5; *see also id.* at 4 n.1 ("District courts in this Circuit have differed in determining which standard to apply when determining if a defendant plausibly used an ATDS."). A number of courts, including at least one court of appeals, have carefully read the FCC's orders in a way that gives effect to the

12

statutory requirement that the equipment can "store or produce telephone numbers to be called, using *a random or sequential number generator*," 47 U.S.C. § 227(a)(1) (emphasis added). In *Dominguez v. Yahoo, Inc.*, the Third Circuit held that "the phrase" in the statute about "'random or sequential' number generation ... refers to the numbers themselves rather than the manner in which they are dialed," 629 F. App'x 369, 372 (3d Cir. 2015), and "reject[ed] [the plaintiff's] claim that the FCC has interpreted the autodialer definition to read out the 'random or sequential number generator' requirement," *id.* at 372–73 n.2. This Court likewise has framed the ATDS inquiry around whether the equipment was "capable of generating random or sequential telephone numbers." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

Other courts have held that the equipment must at least be capable of sending messages to a randomly or sequentially *selected* telephone number. *See, e.g.*, *Duguid*, 2017 WL 635117, at *4; *Weisberg v. Stripe, Inc.*, No. 16-CV-00584-JST, 2016 WL 3971296, at *4 (N.D. Cal. July 25, 2016).

And still others have concluded that equipment can be an ATDS merely if it "stores telephone numbers in a database and dials them without human intervention." *Nunes v. Twitter, Inc.*, No. 14-CV-02843-VC, 2014 WL 6708465, at *1 (N.D. Cal. Nov. 26, 2014).

The disarray in the case law is evidenced by a review of the TCPA decisions

involving Facebook. The *Duguid* decision held that a plaintiff does not plausibly allege an ATDS where his claims suggest "direct targeting that is inconsistent with the sort of random or sequential number generation required for an ATDS." 2017 WL 635117, at *4 (citation omitted). The court below, however, did not require Plaintiff to show that his phone number was randomly or sequentially generated *or* selected. *See* Ex. 1 (Jan. 27, 2017 Order) at 7. All that it required was an allegation that a computer software program sent a message to a number pulled from a list, without a person's affirmative act as an immediate trigger for the message. *See id.* (holding that equipment qualifies as an ATDS where it "would have the 'capacity to generate numbers and dial them without human intervention'" as "the impetus for the transmission of the challenged message"). The *Holt* decision likewise did not require that the numbers be randomly generated, nor did it require that the number be randomly selected. Instead, it found that the plaintiff adequately alleged an ATDS where Facebook could have programmed a computer software program to send the same status update message to more than one number associated with Facebook accounts. *See Holt*, 2017 WL 1100564, at *4. The court held that there would not be human intervention in selecting the number if the same message could have been triggered by conduct (such as seven friends posting status updates) potentially related to more than one user's number. *See id.*

14

As the district court below recognized, this Court has a case pending that seeks to clarify the definition of ATDS.  Ex. 2 (Apr. 27, 2017 Order) at 6 (citing *Marks v. Crunch of San Diego*, No. 14-56834 (9th Cir. Nov. 21, 2014)).  In fact, this Court stayed that case pending resolution of the D.C. Circuit's decision in the appeals challenging the FCC's recent order regarding, *inter alia*, the meaning of ATDS, *see Marks*, ECF No. 62 (9th Cir. Dec. 14, 2016).  This Court's stay order confirms the lack of clarity on the ATDS issue.  And finally, as the district court also recognized, this Court recently issued an unpublished decision in *Flores v. Adir Int'l LLC*, No. 15-56260, 2017 WL 1101103 (9th Cir. Mar. 24, 2017), which emphasized that the ATDS analysis requires an inquiry into the alleged equipment's "*capacity* to 'store or produce telephone numbers to be called, using a random or sequential number generator,' even if [the equipment] was not presently being used for that purpose," *id.* at *1, but which did not address the question on which courts have differed—whether using a software program to dial a number from a list is sufficient or whether the statutory phrase "random or sequential number generator" must be given effect.  This petition provides this Court an opportunity to clarify this important and contentious area of the law.

## C. An Immediate Appeal May Materially Advance The Ultimate Termination Of The Litigation.

The order below also satisfies the final criterion of section 1292(b) that "an immediate appeal may materially advance the ultimate termination of the

15

litigation." *In re Cement*, 673 F.2d at 1026. This requirement is closely connected to the "controlling question" requirement, and where early resolution of a question "might save time for the district court, and time and expense for the litigants," both requirements are generally met. 16 Charles Alan Wright, Arthur R. Miller, et al., *Fed. Prac. & Proc. Juris.* § 3930 (3d ed.) (citing, *inter alia*, *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–319 (9th Cir. 1996)).

As the district court recognized, "there are two highly debatable question[s] that [are] easily separated from the rest of the case, that offer[] an opportunity to terminate the litigation completely, and that may spare the parties of the burden of a trial that is expensive for them even if not for the judicial system." Ex. 2 (Apr. 27, 2017 Order) at 7 (citation omitted). Although interlocutory review will involve some initial delay in the progress of the case, it will be more efficient overall to take the time now to resolve critical issues that will govern whether the case proceeds at all and, if so, under what standards. An appeal that clarifies the governing law now thus will advance the ultimate termination of the litigation whatever conclusion this Court reaches on the questions presented. Neither Plaintiff nor the Government has claimed otherwise.

## II.    The Order Below Presents Important Questions That Warrant An Immediate Appeal.

The Order below also presents questions that particularly merit the exercise of this Court's discretion to permit an immediate appeal. The Court should permit

an immediate appeal to address the critical constitutional issue presented by Facebook's First Amendment argument and whether those constitutional concerns warrant a narrower construction of the TCPA's content-based speech restriction. It would be far more efficient for this Court to address that threshold issue *now* rather than to allow the parties and the district court to expend substantial resources on discovery and trial only to find out on a later appeal that the case should have been barred at the outset. It would also provide important guidance for other cases, especially given the plethora of TCPA cases pending in this Circuit. Section 1292(b) exists to allow this Court to promote such efficient outcomes in exceptional circumstances such as those presented here.

As at least four other courts of appeals have recognized, the Supreme Court's recent decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), adopted a broader approach to determining when a speech restriction is facially content-based.[2] Specifically, *Reed* held that "[g]overnment regulation of speech is

---

[2] *See, e.g.*, *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 509, 511 (D.C. Cir. 2016) ("But since our [prior] decision …, the Supreme Court has articulated a more limited view of the role purpose should play in our analysis.") (overruling prior precedent and finding substantial likelihood at preliminary injunction stage that statute failed strict scrutiny); *Free Speech Coal., Inc. v. Attorney Gen.*, 825 F.3d 149, 160 (3d Cir. 2016) ("[I]n light of *Reed*, our analysis in *FSC I* … cannot stand.") (overruling prior precedent); *Cent. Radio Co. Inc. v. City of Norfolk*, 811 F.3d 625, 632, 634 (4th Cir. 2016) (holding that "*Reed* … conflicted with, and therefore abrogated, our Circuit's previous formulation for

content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. The government's *purpose* in enacting the law does not save a facially content based law. Rather, "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained" in the regulated speech." *Id.* at 2228 (citation omitted).

The takeaway is that more laws will be found content-based, including "laws that might seem 'entirely reasonable'" and were not prompted by ill motive. *Id.* at 2231 (citation omitted). *Reed* recognized this consequence, but insisted that "a clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech." *Id.* And *Reed* reiterated that those additional content-based laws still will be subject to strict scrutiny and still will be "presumptively unconstitutional." *Id.* at 2226.

Yet in its decision, the district court applied a diluted version of strict scrutiny that did not reflect any such presumption of unconstitutionality. Rather, the court held that the TCPA survived this "most exacting standard of review," *id.* at 2237 (Kagan, J., concurring), on the ground that the Government favored only

---

analyzing content neutrality," and invalidating ordinance under strict scrutiny); *Norton v. City of Springfield*, 806 F.3d 411, 412 (7th Cir. 2015) ("*Reed* understands content discrimination differently" than prior precedent).

two types of subject matters, and it was unlikely that there would be a high volume of those calls. Ex. 1 (Jan. 27, 2017 Order) at 14–15. But there is no de minimus exception to strict scrutiny. It does not matter that the sign ordinance at issue in *Reed* had 23 exemptions, whereas the TCPA has two (or actually three, as Facebook argued below). "The vice of content-based legislation ... is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Reed*, 135 S. Ct. at 2229 (citation omitted). This Court has not yet addressed the import of *Reed* and whether the Supreme Court meant what it said in holding that the government is not allowed to favor some subject matter over another and that such laws will be invalidated in all but the rarest cases.[3]

Beyond the importance of *Reed* generally, clarity from this Court on the compatibility of the TCPA with the First Amendment is particularly important, where some courts, including the district court, have interpreted the meaning of ATDS so broadly that the TCPA reaches messages sent by equipment that uses any

---

[3]     This Court held in *National Institute of Family & Life Advocates v. Harris*, 839 F.3d 823, 837 (9th Cir. 2016), *rehr'g and rehr'g en banc denied* (Dec 20, 2016), *cert. pet'n filed* (No. 16-1140) (Mar 20, 2017), that *Reed* does not require "strict scrutiny in abortion-related disclosure cases, even when the regulation is content-based." That decision was based on case law that "routinely applied a lower level of scrutiny when states have compelled speech concerning abortion-related disclosures," *id.*, and is inapposite here.

19

computer software program (just about any dialing equipment in today's age), and it reaches messages that businesses send to people who use their services, including Plaintiff here who created an account on Facebook's social networking service. Social media companies like Facebook allow users to request a variety of notifications, including alerts regarding messages from social media connections or potential data security issues, or other helpful information. An overbroad interpretation of the TCPA has a substantial chilling effect on messages that people desire but that have content disfavored under the TCPA, and that can now only be sent for fear of TCPA liability. Immediate review is warranted.

## CONCLUSION

For the foregoing reasons, the Court should grant permission to appeal.

May 8, 2017                              Respectfully submitted,

                                         */s/ Andrew B. Clubok*

                                         Andrew B. Clubok
                                         KIRKLAND & ELLIS LLP
                                         601 Lexington Avenue
                                         New York, NY  10022
                                         (212) 446-4800

                                         Susan E. Engel
                                         Devin S. Anderson
                                         KIRKLAND & ELLIS LLP
                                         655 Fifteenth Street, NW
                                         Washington, DC  20005
                                         (202) 879-5000

                                         Elizabeth L. Deeley (SBN 230798)
                                         KIRKLAND & ELLIS LLP
                                         555 California Street
                                         San Francisco, CA  94104
                                         (415) 439-1400

                                         *Counsel for Defendant-Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2017, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Ninth Circuit. Participants in this case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that on May 8, 2017, I served the foregoing on counsel for the Plaintiffs and the United States via U.S. Mail pursuant to Fed. R. App. P. 25(c)(1):

Patrick J. Perotti
Frank A. Bartela
DWORKEN & BERNSTEIN CO., L.P.A.
60 South Park Place
Painesville, Ohio 44077

Kristen Law Sagafi
TYCKO & ZAVAREEI LLP
483 Ninth Street, Suite 200
Oakland, CA 94607

Hassan A. Zavareei
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, DC 20036

*Counsel for Plaintiff-Respondent*

22

Michael Raab
Nicolas Y. Riley
U.S. DEPARTMENT OF JUSTICE
Civil Appellate Staff
950 Pennsylvania Ave., N.W.
Washington, DC 20530

*Counsel for Intervenor The United States of America*

/s/ Andrew B. Clubok
Andrew B. Clubok
*Counsel for Defendant-Petitioner*